**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| P.J. CURTIS, | Case No.: 10-00097-REB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** (Docket No. 32) |
| CITY OF GOODING, an Idaho municipality and Idaho corporation; JEFF PERRY, as an individual and in his capacity as an employee of the CITY OF GOODING; ANDREW LOVELL, as an individual and in his capacity as an employee of the City of Gooding; and JOHN DOES I-X, | **PLAINTIFF'S MOTION TO STRIKE PORTIONS OF THE AFFIDAVIT OF JEFF PERRY** (Docket No. 36) |
| Defendants. | |

Currently pending before the Court are (1) Defendants' Motion for Summary Judgment (Docket No. 32), and (2) Plaintiff's Motion to Strike Portions of the Affidavit of Jeff Perry (Docket No. 36). Having carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND[1]

At all times relevant here, Plaintiff P.J. Curtis ("Curtis") was working as a Gooding County Emergency Medical Services ("EMS") provider; Defendant Andrew Lovell ("Lovell") was a City of Gooding Police Officer. This action relates to an altercation between Curtis and Lovell on the morning of February 27, 2008. Specifically, Curtis claims that, while he was in the

---

[1] The following facts are undisputed or, when disputed, taken in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (recognizing district court's obligation to construe the record in light most favorable to non-moving party on motion for summary judgment).

**MEMORANDUM DECISION AND ORDER - 1**

process of beginning to transport a patient to the hospital, Lovell approached the ambulance, opened the door to the rear compartment, ordered Curtis to exit the ambulance, and told Curtis they "needed to talk." According to Curtis, once he exited the ambulance, Lovell threatened him, verbally abused him, and physically struck him in the chest. Curtis then climbed back into the ambulance and left for the hospital.

Later that day Curtis reported the incident to his immediate supervisor and also to Denise Gill ("Gill"), the Director of Gooding County EMS. Gill then met with Defendant Jeff Perry ("Perry"), the Gooding Chief of Police. A month later, on March 27, 2008, Perry requested that the Jerome City Police Department conduct an investigation of the incident. Lovell was later suspended, pending completion of the Jerome City Police Department's investigation. Ultimately, on July 16, 2008, Lovell resigned from the City of Gooding Police Department.

On August 6, 2008, the Jerome City Police Department issued a written report of its investigation of the February 27, 2008 episode. The Jerome City Police Department concluded that both Curtis and Lovell acted inappropriately; however, without additional witnesses or evidence, a formal finding of misconduct by either individual (beyond the admissions of both Curtis and Lovell) could not be sustained.

Lovell died on September 13, 2009 for reasons unrelated to the claims raised by Curtis about the February 27, 2008 incident.

On February 19, 2010, Curtis brought the instant lawsuit against the City of Gooding, Lovell, and Perry, asserting the following claims: (1) assault against Lovell (individually and in his capacity as an employee of the City of Gooding[2]) and the City of Gooding; (2) battery against

---

[2] Even though Lovell is now deceased, Curtis argues that Lovell's conduct while working for the Gooding Police Department is nonetheless attributable to the City of Gooding.

**MEMORANDUM DECISION AND ORDER - 2**

Lovell (individually and in his capacity as an employee of the City of Gooding) and the City of Gooding; (3) extortion against Perry (individually and in his capacity as an employee of the City of Gooding) and the City of Gooding; and (4) violation of 42 U.S.C. § 1983 against Lovell (individually and in his capacity as an employee of the City of Gooding), Perry (individually and in his capacity as an employee of the City of Gooding), and the City of Gooding.

On or around August 24, 2010, U.S. District Judge David O. Carter dismissed Curtis's extortion claim. *See* Order (Docket No. 21).

The Defendants City of Gooding, Perry, and Lovell (in his capacity as an employee of the City of Gooding only) (collectively "Defendants") now move for summary judgment, arguing that (1) Curtis's state tort claims (assault and battery) are not available pursuant to the Idaho Tort Claims Act; (2) the City of Gooding was not the moving force behind any alleged constitutional violations under § 1983; (3) Curtis has not established Perry's individual liability; (4) Perry is entitled to qualified immunity; and (5) Lovell, in his official capacity, is not liable under § 1983 because the City of Gooding was not the moving force behind any claimed constitutional violation.[3] *See* Defs.' Mem. in Supp. of Mot. for Summ. J., pp. 6-19 (Docket No. 32, Att. 2).

## II. STANDARD OF LAW

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually

---

[3] In support of their Motion for Summary Judgment, Defendants refer to Perry's May 23, 2011 Affidavit. *See* Perry Aff. (Docket No. 32, Att. 3). Curtis moves to strike certain portions of Perry's Affidavit. *See* Mot. to Strike (Docket No. 36).

**MEMORANDUM DECISION AND ORDER - 3**

insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id*. at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324. Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e).

### III. DISCUSSION

**A.      Curtis's State Tort Claims (Assault and Battery) Against Lovell (In His Capacity as an Employee of the City of Gooding) and the City of Gooding**

The Idaho Tort Claims Act (ITCA) establishes that governmental entities are subject to liability for their own negligent or wrongful acts, *and* those of their employees who were acting within the course and scope of their employment. *See Hoffer v. City of Boise*, 257 P.3d 1226,

1228 (Idaho 2011) (citing *Grant v. City of Twin Falls*, 813 P.2d 880, 887 (Idaho 1991)).  The

ITCA states:

> Except as otherwise provided in this act, every governmental entity is subject to
> liability for money damages arising out of its negligent or otherwise wrongful acts
> or omissions and those of its employees acting within the course and scope of their
> employment or duties . . . where the governmental entity if a private person or entity,
> would be liable for money damages under the laws of the state of Idaho . . . .

I.C. § 6-903(1).[4]  However, the ITCA also expressly exempts certain causes of action from the

general rule that the governmental entity is subject to liability.  *See Hoffer*, 257 P.3d at 1228

(citing *Grant*, 813 P.2d at 887-88).  In this respect, the ITCA reads:

> A governmental entity and its employees while acting within the course and scope
> of their employment and without malice or criminal intent shall not be liable for any
> claim which . . . [a]rises out of assault, battery, false imprisonment, false arrest,
> malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or
> interference with contract rights.

I.C. § 6-904(3).  Hence, Defendants argue that neither Lovell nor the City of Gooding itself can

be held liable for assault and/or battery, as either (1) Lovell was acting within the course and

scope of his employment and without malice or criminal intent, such that Idaho Code § 6-904(3)

applies to immunize both Lovell and the City of Gooding, or (2) Lovell was individually acting

with malice or criminal intent and, therefore, outside the scope of his employment, such that

Idaho Code § 6-903(3) applies to immunize the City of Gooding.  *See* Defs.' Mem. in Supp. of

Mot. for Summ. J., pp. 6-8 (Docket No. 32, Att. 2).  This Court generally agrees with

Defendants, but not for the same reasons proffered.

The immunity found under Idaho Code § 6-904(3) precludes liability regardless of

whether Lovell was acting with malice or criminal intent – at least as to the City of Gooding's

---

[4]  The sub-sections of Idaho Code § 6-903 were recently re-designated from letters to
numbers.  Therefore, Idaho Code § 6-903(1) aligns with the previous Idaho Code § 6-903(a) and
so forth.

**MEMORANDUM DECISION AND ORDER - 5**

liability.  *See Hoffer*, 257 P.3d at 1228 ("The plain language of . . . [Idaho Code § 6-904(3)]

exempts governmental entities from liability for the torts it lists, whether or not there has been an

allegation of malice or criminal intent.").  Relying upon its previous holding in *White v. Univ. of

Idaho*, 797 P.2d 108, 108-09 (Idaho 1990), the Idaho Supreme Court in *Hoffer* went on to dissect

Idaho Code § 6-904(3)'s language, concluding in no uncertain terms:

> The requirement that an employee have acted "within the course and scope of their
> employment" plainly applies to the act of the employee and not of the governmental
> entity.  Therefore, the language "and without malice or criminal intent" that follows
> the statute's requirement that the employee have acted within the course and scope
> of employment, also by its plain language only applies to the employee.  Thus, "[a]
> governmental entity . . . shall not be liable for any claim which arises out of libel,
> slander . . . or interference with contract rights."

*Hoffer*, 257 P.3d at 1228-29 (internal citations omitted).  Thus, consistent with *Hoffer*, under the

ITCA, an allegation (or even the existence) of malice or criminal intent on behalf of an employee

is immaterial when considering whether a governmental entity may be sued under state common

law tort theories.[5]

---

[5]  In *Hoffer*, the Idaho Supreme Court explicitly called into question case law relied upon
by Defendants here relating to Idaho Code § 6-903(3)'s ability to immunize a governmental
entity from liability in situations where its employee acts with malice or criminal intent:

> However, we agree with Hoffer's contention that *Sprague's* reliance on I.C. § 6-
> 903(c) to support its conclusion that "where a governmental employee acts with
> malice or criminal intent, the governmental entity for whom the employee works
> may not be held liable" was misguided.  While we agree that acts committed with
> malice and/or criminal intent are generally outside the scope of employment, § 6-
> 903(c) does not provide immunity to the entity when the employee acts with malice
> and/or criminal intent.  Rather, it concerns the entity's duties to the employee
> established in the subsection immediately preceding it, § 6-903(b), which requires
> the governmental entity to provide a defense for its employee and to pay its
> employee's judgment when the employee has been sued for a tort he or she
> committed.  Under § 6-903(c), if the employee has acted with malice or criminal
> intent, the entity may "refuse a defense or disavow and refuse to pay any judgment"
> for its employee.  Section 6-903(c) does not speak to the entity's own liability.

With this standard in mind, Defendants' Motion for Summary Judgment in this respect is granted, but only to the extent of Curtis's state common law tort claims against the City of Gooding. However, speaking to those same claims against Lovell in his official capacity, Idaho Code § 6-904(3) does not similarly immunize him if he either (1) was not acting within the scope of his employment as a City of Gooding police officer on the morning of February 27, 2008, or (2) was acting with malice or criminal intent. *See* I.C. § 6-904(3); *see also Hoffer*, 257 P.3d at 1229 ("The district court was correct in dismissing those claims. If he had included an employee as a defendant, his claims against that employee alleging malice or criminal intent would have survived under I.C. § 6-904(3) because an employee is only immune from suit for those intentional torts if there is no allegation of malice and/or criminal intent." (citing *Miller v. Idaho State Patrol*, 252 P.3d 1274, 1287 (Idaho 2011))). Material questions of fact exist in this record regarding these two issues, precluding the entry of summary judgment as to Curtis's state common law tort claims against Lovell in his official capacity as an employee of the City of Gooding.

What is left, then, by way of Curtis's state common law tort claims is a bit unique, given the fact that Lovell is now deceased and the City of Gooding may ultimately not be responsible for Lovell's conduct under Idaho law. *See* I.C. § 6-903(3) ("The governmental entity may refuse a defense or disavow and refuse to pay any judgment for its employee if it is determined that the act or omission of the employee was not within the course and scope of his employment or

_____

*Hoffer*, 257 P.3d at 1229, n.1 (internal citations omitted); *see also Pauls v. Green*, 2011 WL 5520534, *4 (D. Idaho 2011) (denying defendant's motion to dismiss/summary judgment, reasoning: "*Sprague*, however, wrongly interpreted § 6-903(c) to mean that a governmental entity cannot – as a matter of law – be liable if the plaintiff alleges the employee acted maliciously or with criminal intent.").

**MEMORANDUM DECISION AND ORDER - 7**

included malice or criminal intent."). This Memorandum Decision and Order contains no ruling on whether the City of Gooding is obligated to defend and/or indemnify Lovell for state common law tort claims asserted against him in his official capacity on the facts of this case.

**B.** **Curtis's Claims Under 42 U.S.C. § 1983 Against Lovell (In His Capacity as an Employee of the City of Gooding), Perry (In His Capacity as an Employee of the City of Gooding), and the City of Gooding**

42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or the laws of the United States" by any person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 638 (1980). Section 1983 is not itself a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a claim under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the violation was committed by a person acting under color of law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In order to sue a municipal entity – including employees acting within their official capacities – a plaintiff must meet the oft-cited *Monell* standard, *i.e.*, the plaintiff must show that the alleged injury was inflicted through the execution or implementation of the entity's "official policy."[6] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Official policy" may include a "longstanding practice or custom which constitutes the 'standard

---

[6] An unconstitutional policy need not be formal or written to create municipal liability under § 1983; however, it must be so permanent and well-settled as to constitute a custom or usage with the force of law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970). Relatedly, another judge of this Court recently confirmed that the challenged "policy" must be the "moving force behind the constitutional violation." *Delacruz v. Coeur d'Alene Police Dept.*, 2010 WL 1817776, *6 (D. Idaho 2010) (citing *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001)).

operating procedure' of the local government entity." *Ulrich v. City & County of San Francisco*, 308 F.3d 968 (9th Cir. 2002) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Alternatively, a plaintiff may show that the "decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision" or that "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Id.* (internal citations omitted). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-34 (1985).

In support of his § 1983 claims, Curtis alleges that his Fourth, Fifth, and Fourteenth Amendment rights were violated by virtue of the City of Gooding's unconstitutional customs/policies permitting the excessive use of force by its police officers. *See* Compl. at ¶¶ 43 & 44 (Docket No. 43). In particular, Curtis asserts that the City of Gooding ratified Lovell's conduct and, also, negligently hired and retained Lovell. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J., pp. 5-9 (Docket No. 33).

1.    Ratification

Curtis argues that Perry, as the individual with final policymaking authority when it came to police department matters, failed to properly investigate the February 27, 2008 incident and "simply blamed Curtis for the assault and battery [while] adopt[ing] [Lovell's] actions in whole." *See id.* at p. 6. In support of this position, Curtis points to (1) a letter written by Perry on March 3, 2008 letter to Denise Gill (the County EMS Director), (2) Perry's threat to file a patient

abandonment claim against Curtis due to the latter's complaint against Lovell, and (3) Perry's alleged delay in turning the matter over to a third-party agency to investigate the matter. *See id.* at p. 6.

The Court is not so persuaded. First, as acknowledged by Curtis's counsel during oral argument, Perry's March 3, 2008 correspondence to Gill references only Lovell's account of what took place between Lovell and Curtis and makes no reference to Curtis's interpretation of the events. Thus, it is unclear whether, when writing Gill, Perry was also aware of Curtis's side of the story. If he was not aware, Perry could not have been choosing between two versions of what actually happened and, therefore, could not have ratified one version over another – particularly insofar as Curtis alleges that Perry was adopting and ratifying Curtis' version of allegedly inappropriate conduct by Lovell. Even though Perry's letter is, in part, critical of Curtis, Perry otherwise was simply accepting Lovell's subjective explanation of what took place that morning and in doing so could not have made a wholesale ratification of the unconstitutional conduct Curtis now alleges Lovell engaged in. *See, e.g.*, Ninth Cir. Model Civ. Jury Inst. 9.6 (listing one of the five elements of ratification as: "[Perry] ratified [Lovell's] act and the basis for it, *that is [Perry] knew of and specifically approved of the employee's acts*.") (emphasis added). Moreover, even if Perry was fully aware of Curtis's version of what took place between Curtis and Lovell at the time Perry penned his March 3, 2008 letter to Gill, that letter still represents only Perry's understanding of the events that took place that day – events which certainly do not correspond with the same constitutional violations that Curtis alleges Perry ratified through that same letter. Finally, the fact that Perry indicated within that very letter that an outside law enforcement agency would be investigating (and ultimately did investigate) the incident

necessarily indicates in the Court's mind that Perry was not ratifying any particular individual's conduct that day.

Second, there is no evidence in the record that any patient abandonment claim was ever lodged against Curtis. Still, even if Perry threatened to file such a claim, it would have been premised upon Curtis's conduct, not Lovell's conduct. Curtis admits that, while treating a patient, he exited the ambulance to speak with Lovell. His admitted action, albeit in the face of what he alleges was a provocation by Lovell, nonetheless offers the basis for any threatened patient abandonment claim and exists independent of Lovell's conduct. So, as boorish or unjustified as a threat by Perry to file a patient abandonment claim may seem in the circumstances, it does not rise to the point of an endorsement of Lovell's behavior, as Curtis contends. Instead, it exists within the prism of Curtis's – not Lovell's – actions and therefore, cannot amount to a ratification of Lovell's actions.

Third, any perceived delay[7] in involving a third party to investigate the incident giving rise to this action cannot amount to an implicit ratification of Lovell's conduct when considering that, in fact, it was Perry himself who requested that the Jerome City Police Department investigate the matter. *See* Ex. 16 to Kane Aff. at ¶ 17 (Docket No. 32, Att. 7). Further, while the investigation was ongoing, Perry relieved Lovell from his official duties on July 14, 2008.

---

[7]  To be clear, while Perry formally requested that the Jerome City Police Department conduct an investigation on March 27, 2008, he indicated to Gill in his March 3, 2008 letter that he would be in touch with an outside agency to investigate the allegations made between Curtis and Lovell. *See* Ex. 15 to Kane Aff. at ¶ 16 (Docket No. 32, Att. 7) ("Due to the fact that this is not the first incident in which Patrick Curtis has had a complete lack of respect and professional courtesy towards law enforcement, I have contacted an outside agency to investigate this matter. I realize that you have your reservations in regards to Officer Lovell with your own personal contact.").

**MEMORANDUM DECISION AND ORDER - 11**

*See* Perry Aff. at ¶ 47 (Docket No. 32, Att. 3).[8]  In short, soon after Curtis and Lovell clashed, Perry decided to involve a third party to investigate the matter and, within a month thereafter, formally made that request of the Jerome City Police Department.  Even if the action to do so did not occur immediately, the length of time between the date of the incident and the date that Perry told Gill that an independent investigation would be requested was not inordinately long under the circumstances.[9]

### 2.    Negligent Hiring and Retention

According to the City of Gooding Police Policy Manual ("Policy Manual"), filling an opening begins with interested job seekers completing an employment application.  *See* Ex. 2 at § 16.1 to Kane Aff. at ¶ 3 (Docket No. 32, Att. 5).  Potential candidates gleaned from the employment applications then (1) appear before an oral review board for questioning; (2) are scored on a written examination; and (3) must take and pass the P.O.S.T. physical fitness test.

---

[8]  It is unclear what actually prompted Lovell's July 14, 2008 dismissal, given independent complaints of battery against Lovell on July 13, 2008.  *See* Perry Aff. at ¶ 46 (Docket No. 32, Att. 3).

[9]  The Jerome City Police Department's investigation ultimately concluded:

> Both Lovell and Curtis acted inappropriately when the verbal confrontation began at the onset, which escalated into further verbal and physical confrontation as stated by both parties.  Curtis, by his own statement said that he verbally challenged Lovell as he exited the ambulance, which most likely was a catalyst to the physical confrontation.  Lovell admitted to shoving Curtis after Curtis slammed his chest into him, but Curtis could not remember whether or not he was shoved or punched by Lovell.  Curtis and Lovell listed no other witnesses to their confrontation, and the only evidence available is the statements provided by Curtis and Lovell.  Without further witnesses or evidence, a finding of misconduct other than that admitted by the participants cannot be sustained.

*See* Ex. 21 to Kane Aff. at ¶ 22 (Docket No. 32, Att. 7).

**MEMORANDUM DECISION AND ORDER - 12**

*See id*. at § 16.2. The Policy Manual then calls for the top three applicants from the combined scoring to be asked to take a pre-employment polygraph examination. *See id*. The final applicant is then brought in for an interview with the Chief of Police. *See id*. If so desired, the Chief of Police will give a letter to the final applicant for conditional employment, and upon the City Council's final approval, the final applicant will have the job offered to him. *See id*.

With this "hiring policy" in mind, Curtis takes issue with the manner in which Lovell was hired by the City of Gooding Police Department – namely, that Lovell never underwent a polygraph examination and that Lovell was hired without the City Council's final approval. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J., p. 9 (Docket No. 33) ("Thus, Perry, acting on behalf of the City, violated two of the most basic requirements in hiring a new applicant: (1) conduct a polygraph and (2) get final council approval for the hire.").[10]

In fact, the Gooding Police Department did not perform a polygraph examination prior to hiring Lovell. According to Perry, financial constraints at that time caused the Gooding Police Department to not always require a top applicant to undergo a city-administered polygraph examination. *See* Perry Aff. at ¶ 11 (Docket No. 32, Att. 3). However, other agency-administered polygraph examination reports concerning Lovell *were* sought out prior to his hiring. *See id*. After inquiries to other law enforcement agencies, Perry secured a January 8,

---

[10] As to his negligent hiring/retention claim under § 1983, it is not clear whether Curtis objects to the hiring protocol outlined within the Policy Manual itself or, alternately, that Perry and the Gooding Policy Department did not actually follow the Policy Manual when hiring Lovell. Although it seems he chooses the latter position given the arguments raised, Curtis's Complaint does not make this clear. Additionally, Curtis's briefing cites to *Woods v. Town of Danville, W.V.*, 712 F. Supp. 2d 502 (S.D. W. Va. 2010) in support of his claim. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J., p. 8 (Docket No. 33). In *Woods*, the district court in West Virginia analyzed the plaintiff's negligent hiring and retention claim(s) under West Virginia state law, not § 1983. *See Woods*, 712 F. Supp. 2d at 514-515. Regardless, the Court will interpret Curtis's negligent hiring claim as alleging a flawed practice of hiring employees in contravention of the Policy Manual.

**MEMORANDUM DECISION AND ORDER - 13**

2007 polygraph report concerning Lovell from the Twin Falls County Sheriff's Office. The report indicated that Lovell was deceptive in questions about past illegal drug use and stealing. *See* Polygraph Rpt., attached as Ex. 9 to Kane Aff. at ¶ 10 (Docket No. 32, Att. 6). Previous illegal drug use would have automatically disqualified Lovell from employment with the Twin Falls County Sheriff's Office. However, in 2007, there was no such automatic disqualification policy for employment with the Gooding Police Department. *See* Perry Aff. at ¶¶ 16-17 (Docket No. 32, Att. 3). Still, the import of Lovell apparently exhibiting behavior indicative of deception with respect to whether he lied to the polygraph examiner "about stealing" is unresolved within a summary judgment context. *See* Polygraph Rpt., attached as Ex. 9 to Kane Aff. at ¶ 10 (Docket No. 32, Att. 6). Although the polygraph report contains no additional elaboration on that subject,[11] it does inject some degree of uncertainty as to whether Lovell was fit to be a police officer with the Gooding Police Department in the first place. As the non-moving party, issues of fact are to be construed in Curtis's favor; when doing so, the Court cannot altogether ignore the fact that the Gooding Police Department did not perform a polygraph examination as outlined in the City of Gooding Police Policy Manual or that a prior polygraph examination report obtained by the Department raised issues of Lovell's fitness for police work.[12]

_____

[11] In 2007, absent either a felony conviction for any crime, a misdemeanor conviction for any drug offense within five years, or a DUI conviction within two years, an applicant for the Gooding Police Department, including Lovell, was eligible for employment. *See* Perry Aff. at ¶ 21 (Docket No. 32, Att. 3) (citing 2007 IDAPA 11.11.01.050-063). Aside from his ultimate hiring, it is unclear whether (or to what extent) the results of Lovell's polygraph test might have led to facts that implicated these restrictions. Whatever they might have been, there is nothing in the record indicating that Lovell had prior, offending drug or DUI convictions.

[12] Curtis claims that, in July 2008, "the City finally took a comprehensive look into [Lovell's] background that revealed his life was plagued with the same issues that are currently before the court." *See* Pl.'s Resp. to Defs.' Mot. for Summ. J., p. 9 (Docket No. 33). This July 2008 investigation, however, dealt largely with matters taking place *after* Lovell was hired and, therefore, is not instructive on the predicate issue of negligent hiring.

It is also true that the City Council did not separately approve Lovell's hire. *See* Perry Aff. at 27:19-20, attached as Ex. A to Heida Aff. at ¶ 3 (Docket No. 35). Perry testified at his deposition, however, that it wasn't needed:

> Q:     Last, "Upon the City Council's final approval, the final applicant will have the job offered to them."
>
> A:     Yes, that is trumped. The City Council – or the City revised its, and they won't call it a policy, they'll call it a handbook, and that's where I talked about they made department heads – I don't know what all the legalities are behind it. But I guess there's some type of FLSA laws – or, I don't know, you guys are the attorneys. But they trumped that, but it was never removed. We just kind of knew it was there.
>
> Q:     So you didn't present this – you didn't present Mr. Lovell for final approval to the Council?
>
> A:     Not for hire, no.
>
> Q:     And that was contrary to the policy at the time?
>
> A:     No, not necessarily. I guess the policies in '04, and I don't know when they changed the manual, but the manual, they were giving us the right to hire and fire. So I guess if you're going strictly off of this, then, yes, it would be contrary to what it has.

*See id.* at 29:6-30:3. At best, then, it is uncertain whether, despite the Gooding Police Department's Policy Manual (*see supra* at pp. 12-13), the City Council's approval was actually needed before hiring Lovell or any other Gooding Police Department employee. Once again, construing inferences that can be drawn from this evidence in Curtis's favor, the Court cannot say as a matter of law that City Council approval was unnecessary before hiring Lovell when the City of Gooding Police Policy Manual appears to state exactly the opposite – notwithstanding Perry's conflicting deposition testimony.

Still, even when assuming the existence of these potential hiring issues, there is no evidence that either of the alleged inadequacies in the hiring process contributed to Curtis's

alleged injury. To state a § 1983 claim for damages, a plaintiff must allege that the defendant's conduct was the actionable cause of its injuries, which includes allegations of both causation-in-fact and proximate causation. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 783 (9th Cir. 2000). A claim fails when there are "intervening causes that break the chain of proximate causation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) ("Negligent hiring or supervision is proscribed under *Monell* but such negligence, as in all *Monell* actions, must be the proximate cause of the injuries suffered. Pointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under *Monell*. Rather, the policy must be the proximate cause of the section 1983 injury.") (citing *Mann v. City of Tucson, Dep't of Police*, 782 F.2d 790, 793 (9th Cir. 1986); *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981)). Any failure to conduct a new pre-employment polygraph examination or obtain City Council approval for Lovell's hire is not prima facie evidence that either the Gooding Police Department or the City of Gooding could have foreseen Lovell's actions, which would establish the necessary causal link between any underlying policy and Curtis's injuries. Lovell's conduct broke the chain of proximate cause connecting the Gooding Police Department's and/or the City of Gooding's alleged negligence to Curtis's injuries. Curtis' evidence is simply insufficient on this prong of his claim.[13]

---

[13] Although Curtis also alleges that the Gooding Police Department negligently retained Lovell, he fails to articulate the basis for such a claim – if it is based upon Perry's alleged ratification of Lovell's conduct, that argument is misplaced (*see supra* at pp. 9-12); if it is premised upon a simple progression of the Gooding Police Department's allegedly negligent hiring, that argument is also misplaced (*see supra* at pp. 12-16); finally, if it is because the Gooding Police Department continued to employ Lovell after the February 27, 2008 incident, that argument ignores the fact that Lovell was placed on administrative suspension soon thereafter and, while suspended, ultimately resigned.

**MEMORANDUM DECISION AND ORDER - 16**

In sum, there is insufficient evidence of an alleged ratification or of all of the elements of a negligent hiring/retention claim. Accordingly, Curtis cannot maintain a § 1983 claim against either Lovell (in his capacity as an employee of the City of Gooding), or Perry (in his capacity as an employee of the City of Gooding), or the City of Gooding. Defendants' Motion for Summary Judgment is therefore granted in these respects.

**C.     Curtis's Claims Under 42 U.S.C. § 1983 Against Perry in his Individual Capacity**

Individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "A victory in such a suit is a 'victory against the individual defendant, rather than against the entity that employs him,'" and "[t]hus, the Eleventh Amendment prohibition against monetary damages imposed on a state does not apply . . . ." *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 973 (9th Cir. 1994) (quoting *Graham* at 167-68).

"If the state official did not have personal involvement in the alleged constitutional deprivation, then plaintiff must show that the official 'implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.''" *Sizemore v. Shoshone Co.*, 2011 WL 2842876, *4 (D. Idaho 2011) (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)). A supervisor may also be held liable in his individual capacity for his own action or inaction in the training, supervision, or control of his subordinates; his acquiescence in any constitutional deprivations of which the complaint is made; or for conduct that shows a reckless or callous indifference to the rights of others. *See Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

**MEMORANDUM DECISION AND ORDER - 17**

Perry argues that Curtis fails to establish facts which would make him individually liable and, further, that he is entitled to qualified immunity. *See* Defs.' Mem. in Supp. of Mot. for Summ. J., pp. 16-17 (Docket No. 32, Att. 2).

    1.   <u>Perry's Supervisor Liability</u>

Perry claims that he was not present when the incident between Lovell and Curtis took place and that he cannot be individually responsible for any alleged deficiencies in the training, supervising, or controlling of his subordinates. *See id*. at p. 16. In response, Curtis does not contend that Perry was present or personally participated in the events leading up to this lawsuit. Instead, Curtis's claim against Perry individually is based upon Perry's alleged ratification of Lovell's conduct. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J., pp. 9-11 (Docket No. 33) ("Perry, instead of turning the complaint over to the review board or performing an investigation consistent with the City's manual, simply blamed Curtis for the assault and battery and adopted the Officer's actions as a whole.").

This Court has already found, as a matter of law, that Perry did not ratify Lovell's conduct. *See supra* at pp. 9-12. In addition, Curtis's counsel appropriately conceded during oral argument that, absent ratification, Perry cannot be individually liable for Lovell's actions. Because Perry did not ratify Lovell's conduct, Curtis's § 1983 claims against Perry individually cannot stand. Defendants' Motion for Summary Judgment is granted in this respect.[14]

---

[14] Curtis relies upon *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) in support of his ratification argument. In *Larez*, Chief Daryl Gates wrote a letter to one of the plaintiffs, notifying him that his complaints following a home search could not be sustained. *See id*. at 635. At trial, the plaintiffs' expert witness testified that, had he been in Chief Gates's shoes, he would have disciplined the individual officers and would have established new procedures for averting the reoccurrence of similar excesses in the future. *See id*. at 646. In upholding the jury verdict, the Ninth Circuit acknowledged that neither step was taken by Gates but, instead, "he signed a letter informing Jessie Larez that none of his many complaints would

2. Perry's Qualified Immunity

In § 1983 actions, the doctrine of qualified immunity protects state actors from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate clearly established federal rights. *See Sizemore*, 2011 WL 2842876 at \*5 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "On the other hand, a state official may be held personally liable in a § 1983 action if the state actor knew or should have known that he or she was violating a plaintiff's clearly established federal right(s)." *Id.* "Consistent with its dual purposes of protecting state actors who act in good faith but redressing clear wrongs, the qualified immunity standard 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

Perry argues that, not having directly participated in the at-issue conduct and having arranged for an independent investigation when made aware of the incident, there was no more action required of him, particularly after the investigation found no misconduct and Lovell had already left the Gooding Police Department. *See* Defs.' Mem. in Supp. of Mot. for Summ. J., pp. 16-17 (Docket No. 32, Att. 2). Curtis disagrees, pointing, again, to Perry's alleged ratification of Lovell's behavior and alleged threat to bring a patient abandonment claim. *See* Pl.'s Resp. to

_____

be sustained, thereby ratifying the investigation into the Larezes's complaint." *Id.* The same cannot be said with respect to Perry's March 3, 2008 letter to Gill, especially when recognizing that (1) Perry announced within that same letter that a third party would be investigating the incident between Curtis and Lovell, and (2) Perry later placed Lovell on administrative suspension pending the completion of the investigation. So, while Gates's conduct in *Larez* can be viewed as setting in motion the acts complained of, the same cannot be said for Perry's conduct here.

**MEMORANDUM DECISION AND ORDER - 19**

Defs.' Mot. for Summ. J., pp. 11-12 (Docket No. 33) ("Such a[ ] [qualified immunity] argument ignores the ratification of the underlying conduct and the threat he made.").

As previously discussed, Perry did not ratify Lovell's actions – either by directly condoning Lovell's conduct, threatening a patient abandonment claim, or delaying any investigation. *See supra* at pp. 9-12. Instead, based upon the record before the Court, Perry acted in an objectively reasonable matter under the circumstances presented to him. Therefore, Perry is entitled to qualified immunity with respect to Curtis's § 1983 claim against him individually. Defendants' Motion for Summary Judgment is granted in this respect.[15]

## IV.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Defendants' Motion for Summary Judgment (Docket No. 32) is GRANTED in part and DENIED in part as follows:

    a.      Curtis's assault and battery claims against the City of Gooding are dismissed;

    b.      Curtis's assault and battery claims against Lovell in his official capacity are not dismissed at this time; and

    c.      Curtis's § 1983 claims against Lovell (in his official capacity), Perry (individually and in his official capacity), and the City of Gooding are dismissed.

---

[15]  Regarding Curtis's Motion to Strike Portions of the Affidavit of Jeff Perry (Docket No. 36), the Court did not rely upon any of the paragraphs Curtis objects to in reaching its decision vis à vis Defendants' Motion for Summary Judgment. Therefore, Curtis's Motion to Strike is denied as moot.

2.      Plaintiff's Motion to Strike Portions of the Affidavit of Jeff Perry (Docket No. 36)

is DENIED as moot.

In light of this Memorandum Decision and Order, **IT IS FURTHER ORDERED**

**THAT**, on or before **January 18, 2012**, the parties are to notify the Court concerning the status

of the action – specifically, whether Defendants' Motion for Summary Judgment effectively

resolves the claims raised in the underlying Complaint.  Unless otherwise notified, the Court will

vacate any pending deadlines and enter a corresponding judgment, consistent with this

Memorandum Decision and Order.



DATED:  **January 4, 2012**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**